**MASON LLP**
Danielle L. Perry (SBN 292120)
Gary E. Mason (admitted *pro hac vice*)
5335 Wisconsin Avenue NW, Suite 640
Washington, D.C. 20015
Telephone: (202) 429-2290
Facsimile: (202) 429-2294
Email: dperry@masonllp.com
Email: gmason@masonllp.com

*Counsel for Plaintiff and the Proposed Class*

[Additional counsel appearances on signature page]

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIN KIRCHENBERG, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AINSWORTH PET NUTRITION, INC., and THE J.M. SMUCKER CO.,<br><br>Defendants. | Case No.: 2:20-cv-00690-DAD-DMC<br><br>**STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

1. **PURPOSE**

This Order will govern discovery of documents and electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2. **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. **SCOPE**

The ESI Protocol shall also govern productions made by any third party who is subpoenaed in this action unless otherwise agreed to by the issuing party and the third party. Accordingly, the ESI Protocol shall be attached to any subpoena issued in this action.

To the extent a technical term is not defined herein, those technical terms shall be defined by the "The Sedona Conference Glossary: E-Discovery and Digital Information Management," Fifth Ed., February 2020.

The production specifications in this Order apply to paper records and ESI that are produced in the first instance in this Action. The terms and specifications of this Order shall only apply to productions made after the date of entry of this Order. Productions in this Action that were delivered before the date of entry of this Order are exempt from the terms of the Order, unless the Producing Party and Receiving Party otherwise agree.

4. **DEFINITIONS**

a)   "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure.

b)   "Electronically stored information" or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

c)   "Hard-Copy Document" means Documents existing in paper form at the time of collection.

   d) "Native Format" means and refers to an electronic document's associated file structure defined by the original creating application. For example, the native format of an Excel workbook is a .xls or .xslx file.

   e) "Metadata" refers to application and system information of a file that contains data about the file, as opposed to describing the content of a file, as the term is described and used in "The Sedona Conference Glossary: E-Discovery and Digital Information Management," Fifth Ed., February 2020.

   f) "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, visible text within an image.

   g) "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set.

   h) "Confidentiality Designation" means the legend affixed to "Confidential" or "Highly Confidential" Discovery Material as defined by, and subject to, the terms of the Stipulated Protective Order.

   i) "Searchable Text" means the native text extracted from ESI and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

**5. PROPORTIONALITY**

Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information consistent with Fed. R. Civ. P. 26(b)(1). This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues. A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

**6.     PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a)     The parties will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary;

b)     The parties will meet and confer regarding the custodians for whom ESI will be preserved and/or produced;

c)     The following data sources may be deemed to be not reasonably accessible and because of the proportionality factors may need not be preserved pursuant to Fed. R. Civ. P. 26(b)(2)(B): backup or other long-term storage media that were created as a data back-up or disaster recovery medium, digital voicemail, text messages, automatically saved versions of documents, temporary data stored in a computer's random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating systems, deleted, slack, fragmented or other data only accessible by forensics, server, system or network logs, on-line access data such as temporary internet files, history, cache, cookies, and the like, dynamic fields of databases or log files that are not retained in the usual course of business, data in metadata fields that are frequently updated automatically, such as last opened dates, and systems no longer in use that cannot be accessed.

**7.     SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library

("NSRL") NIST hash set list. Additional culling of file types based on file header information may include, but are not limited to: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, MP3 Files, MP4 Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Quicktime Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Video Media Files, Waveform Audio File Format, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File. Source code files will be provided according to the Protective Order and not included in custodial data productions.

**8.     PRODUCTION FORMATS**

The parties agree to produce documents in TIFF and/or native file formats as set forth below. If particular documents reasonably warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

a)     Electronic Production of Paper Documents as Static Images: The parties agree that to the extent that a producing party elects to produce hard copy documents in electronic format, such documents will be produced in the following format:

   i.   Single page Group 4 Tagged Image File Format (.TIF or .TIFF) files at 300 x 300 dpi resolution and 8.5 x 11 inch page size, unless a document requires a higher resolution in order to be appropriately viewed.

   ii.  A unique Bates number shall be assigned to each page, and branded in the lower right-hand corner of the page, but shall not obscure any part of the underlying image. Each image should have a unique file name, which will be the Bates number of the individual page.

   iii. Any confidentiality or other endorsements shall be branded on the lower left-hand

corner of the page. The parties shall use reasonable measure to ensure that any such branding does not obscure any part of the underlying image.

 iv. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should be merged into multiple records (i.e., paper documents should be logically unitized). The parties will make their best efforts to have their vendors utilize documents correctly and will commit to address situations where there are improperly utilized documents.

 v. The parties agree that any file folders and/or documents affixed to hard copy documents will be scanned as separate documents.

 vi. The parties agree that the producing party shall also produce searchable optical character recognition ("OCR") text of scanned paper documents consistent with the specifications for Searchable Text set forth in Section 5(e), below.

b) Production of ESI in Native File Format: The parties agree that certain documents will be produced in native format, including:

 i. Spreadsheet formatted document (e.g., Microsoft Excel Files).

 ii. Presentation formatted documents (e.g., Microsoft PowerPoint Files). PowerPoint Documents shall be processed with hidden slides and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes on the TIFF image. If PowerPoint versions are not produced as native files (e.g., because of redactions), then (i) color PowerPoint Documents shall be converted to color JPG images, and (ii) black and white PowerPoint Documents shall be converted to black and white TIFF images, provided, however, proper grayscale printing shall be enabled to ensure that any dark colored text will not be hidden from view by other dark objects/drawings around the text.

 iii. Any documents produced in native format should be produced in accordance with the following specification:

  1. A unique Bates number and confidentiality designation shall be used as the file name and the original file name and file extension shall be preserved in

the corresponding load file. An example of this convention would be:

"[BATES PREFIX]_000001_HighlyConfidential.xls"

2. The native format documents shall be accompanied by reference information that sets forth for each document, sufficient information to allow the Parties to track and authenticate the native format documents produced, including: (1) the name of the custodian from whose files the electronic file is produced; (2) an appropriately calculated "MD-5 Hash Value"; (3) the original name of the file; and (4) a Bates number.

3. For each produced native file, the producing party will provide a static image slipsheet indicating that the document was produced in native format and providing the unique Bates number for the corresponding native file.

c) Production of ESI as Static Images: Except for those documents produced in native format pursuant to Section 5(c), above, the parties agree that ESI will be produced in TIFF format according to the following specifications:

i. All TIFF formatted documents will be single page, Group 4 TIFF at 300 X 300 dpi resolution and 8½ X 11 inch page size, except for documents requiring different resolution or page size.

ii. An image load file, in standard Opticon format, showing the Bates number of each page and the appropriate unitization of the documents, will accompany all document images.

iii. Each imaged version of an electronic document will be created directly from the original electronic document.

iv. TIFFs shall be produced as black & white, single-page TIFF images in accordance with the technical specifications set out above, unless agreed with the opposing party or ordered by a court. Upon written request that identifies a reasonable number of individual documents at issue by Bates number, a party shall produce color images for those documents. Documents produced in color shall be produced as single page, 300 DPI, color JPG images with the quality setting of 75% or higher.

v. All TIFF files are to be provided with an accompanying searchable text (.TXT) file

extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows.1 In the case of files with redacted text, OCR'ed text of the redacted documents may be provided in lieu of extracted text. OCR software should be set to the highest quality setting during processing. For documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

vi. Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES000001.TXT).

vii. In the case of email, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

viii. The parties agree to meet and confer regarding file types that are not amendable to conversion into TIFF images. If necessary, any such relevant and responsive, but non-convertible files, may be temporarily produced in the form of a placeholder TIFF image.

d) Production of Searchable Text: Searchable/extracted text should be produced as a document-level multi-page text file with the text file named the same as the BEGBATES field and placed in a separate folder. The full path of the text file must be provided in the .DAT file in the TEXTLINK field. For files produced natively, the full path of the native file (also named the same as the BEGBATES field) must be provided in the .DAT file for the NATIVELINK field. Searchable/extracted text for redacted documents will reflect only the non-redacted portions.

Metadata: The following metadata fields associated with each electronic document will be produced, to the extent they are available. No party shall be required to manually populate any fields that do not exist as a document is maintained in the ordinary course of business:

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI |
|---|---|---|---|
| Custodian | Name of custodian(s) of email(s) or file(s) produced (Last Name, First Name format) as available | X | X |
| Duplicate Custodian (or similar name) | Name of duplicate custodian(s) of email(s) or file(s) produced | X | X |
| BegBates | Beginning Bates# (including Prefix) | X | X |
| EndBates | Ending Bates# (including Prefix) | X | X |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | X | X |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | X | X |
| From | From field extracted from an email message | X | |
| Author | Author field extracted from the metadata of a non-email document | | X |
| To | To or Recipient extracted from an email message | X | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | X | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | X | |
| EmailSubject | Subject line extracted from an email message | X | |
| Filename | Original name of file as appeared in original location | | X |
| Title | Title field extracted from the metadata of a non-email document | | X |
| DateSent | Sent date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | X | |
| DateRcvd | Received date of an email message (mm/dd/yyyy format) (a given | X | |

| | | | |
|---|---|---|---|
| | email will have either a DateSent or Date Recvd, but not both) | | |
| DateCreated | Date that a non-email file was created (mm/dd/yyyy format) | | X |
| DateLastModified | The application recorded time on which the document was last modified | | X |
| TimeSent | Time e-mail was sent (hh:mm:ss format) (a given email will have either a TimeSent or Time Recvd, but not both) | X | |
| TimeRcvd | Time e-mail was received (hh:mm:ss format) (a given email will have either a TimeSent or Time Recvd, but not both) | X | |
| FileExtension | The file extension for the document | | X |
| FilePath | File path storage location of the document or email if the source application allows for the creation of folders | X | X |
| NativeLink | Relative path to any files produced in native format | X | X |
| TextLink | Relative path to any OCR/extracted text files in the production set | X | X |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | X | X |
| Confidentiality Designation | Confidentiality Designation for produced documents | X | X |
| Redaction | Identifies if a document has been redacted | X | X |

e) Fielded data should be exchanged via a document-level-database load file in one of two delimited formats. Either standard Concordance (DAT) or comma delimited (CSV). All image data should be delivered with a corresponding image load file in one of three formats; standard IPro (LFP), Opticon (OPT) or Summation (DII). The total number of image files referenced in the image load file should match the total number of images in the production delivery.

f) A producing party shall not be required to search for or produce more than one identical copy of responsive documents absent a showing of good cause that the production of

such additional identical copies is necessary.

### 9. DE-DUPLICATION

De-duplication may be performed globally (across the entire production) and within each custodian. If a duplicate document exists that is part of a document family, the duplicate will only be removed if the entire family is removed as a duplicate.

A party may also de-duplicate email threads and attachments as follows: In an email thread, only the most evolved ("inclusive") responsive email in a thread may be produced. Where an earlier-in-thread email has a responsive attachment not contained within the most evolved responsive email, the most evolved earlier-in-thread email containing the attachment will also be produced along with its attachment. An attachment is a file associated with an email for retention and storage as a single message unit.

To the extent that an e-mail thread contains privileged communications, such communications can be redacted. If an e-mail thread contains responsive, non-privileged communications, the entire e-mail thread shall not be withheld as privileged.

### 10. PHASING

The parties will endeavor to produce responsive ESI on a rolling basis. If either party feels production has been unreasonably delayed, the parties agree to confer via telephone or in person to reach a mutually agreeable consensus prior to court involvement.

### 11. DOCUMENTS PROTECTED FROM DISCOVERY

a) The Parties agree that they will negotiate and seek entry of an order under Fed. R. Evid. 502(d) that shall govern disclosures of documents or communications otherwise protected from disclosure by the Attorney Client Privilege, as well as procedures for providing notice of and clawing back the same.

b) Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log.

c) Disclosures among defendants' attorneys or plaintiff's attorneys of work product or other communications relating to issues of common interest shall not affect or be deemed a waiver of any applicable privilege or protection from disclosure.

    d)    Activities undertaken in compliance with the duty to preserve information are protected from discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

    e)    Nothing in this Agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**12.    PRIVILEGE LOG AND TREATMENT OF PRIVILEGED MATERIALS**

    a)    Consistent with the Federal Rules of Civil Procedure, a Party withholding or redacting any responsive Document on the grounds of privilege, immunity, or any similar claim shall provide to the receiving party a privilege log within 60 days following the production of documents from which the privileged documents are withheld, except that the Parties shall have no obligation to log (i) privileged communications with outside counsel whose representation is relevant to the subject matter of this action; (ii) work product of outside counsel; and (iii) redactions of produced documents, provided that the reason for the redaction appears on the redaction label and the producing party honors reasonable requests to log redactions of designated documents in which a log entry is necessary to enable a receiving party to assess the claim that the information is privileged or subject to protection as trial-preparation material. The parties have agreed to meet and confer about the timing of the privilege log(s) should there be disagreements or imminent deadlines potentially affected by the production at issue.

    b)    Privilege Log Contents. Communications with attorney may be identified on a privilege log by category, rather than individually, if appropriate, provided that every document withheld from production on the basis of privilege and falling within an applicable category is individually identified by unique alphanumeric identifier (e.g., Bates number), relevant metadata (e.g., Sender, Recipients, Document Date) and other data including a description of the contents of the Document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the Document and the basis of the claim of privilege or immunity. If a party nevertheless opts to log every Document individually, for each Document withheld or redacted, the privilege log shall contain the following information: (i) the date of the Document;

(ii) identification of the person(s) who authored or sent the Document, including their name and any other information needed to assess the claim of privilege; (iii) identification of person(s) designated as addressees or copyees, including their name and any other information needed to assess the claim of privilege; (iv) a description of the contents of the Document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the Document and the basis of the claim of privilege or immunity; (v) the type or nature of the privilege asserted (e.g., attorney-client privilege, work-product doctrine, etc.); and (vi) subject to the limitations above, Bates numbers for produced documents with redactions. For all individuals listed on a log whose role as an attorney—or legal personnel acting under the direction of an attorney—is the basis for a claim of privilege, the privilege log shall identify them as such (for example, by placing an asterisk next to the name).

  c) Protocols for Logging E-mail Chains. If a party has elected to produce only most-evolved email chains consistent with § 10, above, then only those most-evolved chains eligible for production, as defined above, but withheld from production or redacted on the basis of privilege, and their attachments, shall be set forth on its privilege log. A party may not log only most-evolved, last-in-time, or most-inclusive email threads if it has not restricted its document production in the same manner. The Parties shall not be required to log identical ("lesser") copies of an E-mail that is included in a chain that has been logged in accordance with this Paragraph. If a party has not elected to produce only most-evolved email chains, then all individual emails withheld from production on the basis of privilege must be logged (individually, or by category as described above).

  d) Protocol for Logging "Families." There is no need to separately log family members (e.g., attachments to email).

  e) Protocol for Partially Privileged or Protected Documents. If only a portion of a Responsive Document, including, without limitation, E-mail, is claimed to be privileged or protected, the producing party shall furnish a redacted version of the Responsive Document, removing only the part(s) thereof claimed to be privileged or protected from disclosure. If portions of Documents are redacted for privilege or for any other reason, the redaction "tag" should indicate

the basis and the "REDACTED" metadata field be populated with a "Y," "Yes," or "Redacted."

### 13. REDACTIONS

The parties may use redactions for protecting attorney-client privilege and attorney work product. In addition, the parties may use redactions to protect information prohibited from disclosure by federal, state, or foreign statutes or regulations, for which the redacting party shall identify the applicable statute or regulation that serves as the basis for such redaction; medical information concerning any individual person; and personally identifiable information or sensitive personal information. A party may not redact information on the basis that it is non-responsive or not relevant, or that it contains trade secrets or other confidential information. Redacted documents will be produced in TIFF format with corresponding searchable OCR text and the associated metadata for the document, ensuring the redacted content is fully protected from disclosure. Documents that do not render in a readable format to TIFF, such as Excel spreadsheets, may be redacted in native form as long as the producing party keeps a pristine, unredacted copy of the native file and identifies the natively redacted documents to the receiving party in the production cover letter or by way of a native redaction field.

### 14. DATA SECURITY

All documents and ESI produced in electronic, native, or TIFF image must be stored and maintained by a receiving party at a secure location and/or in a secure manner consistent with the requirements prescribed for the protection and security of Protected Information by the Protective Order in this litigation..

### 15. MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation," and each modified Stipulated Order will supersede the previous Stipulated Order.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

DATED: January 27, 2023

          /s/ Danielle L. Perry

Gary E. Mason*
Danielle L. Perry (SBN 292120)
**MASON LLP**
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015
T: 202-429-2290
gmason@masonllp.com
dperry@masonllp.com

Jeffrey S. Goldenberg*
**GOLDENBERG SCHNEIDER L.P.A.**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
T: 513-345-8291
jgoldenberg@gs-legal.com

Jonathan Shub (SBN 237708)
**SHUB LAW FIRM LLC**
134 Kings Hwy. E., 2nd Floor
Haddonfield, NJ 08033
T: 856-772-7200
jshub@shublawyers.com

Charles E. Schaffer*
David C. Magagna Jr.*
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
T: 215-592-1500
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

*Admitted pro hac vice           ***Attorneys for Plaintiff Erin Kirchenberg***

|   |   |
|---|---|
| 1 | /s/ Sean H. Suber |
| 2 | Ronald Y. Rothstein |
|   | Sean H. Suber |
| 3 | WINSTON & STRAWN, LLP |
| 4 | 35 West Wacker Drive |
|   | Chicago, IL 60601 |
| 5 | Email: RRothste@winston.com |
| 6 | Email: SSuber@winston.com |
| 7 | Shawn R. Obi |
|   | WINSTON & STRAWN, LLP |
| 8 | 333 S. Grand Avenue, Suite 3800 |
| 9 | Los Angeles, CA 90071 |
|   | Email: SObi@winston.com |

**Attorneys for Defendants**

1  **IT IS SO ORDERED.**

3  **Dated:  February 2, 2023**

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE